**Jerry E. SIMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1182S450.**

Supreme Court of Indiana.

July 26, 1984.

John F. Surbeck, Jr., Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of murder, Ind.Code § 35–42–1–1(2), and burglary, a class A felony, Ind.Code § 35–43–2–1. The case was tried before a jury. Appellant was sentenced to a term of fifty years.

Appellant raises two issues on appeal: (1) whether the trial court erred in giving State's "mere subsidiary evidence" instruction; and (2) whether there is evidence sufficient to prove beyond a reasonable doubt that appellant murdered the victim.

The facts tending to support the verdict show that on the evening of December 13, 1981 appellant entered the home of Edwin Rose located at 1326 East Wayne Street in Fort Wayne. Before entering, appellant threw a brick through a window. Appellant took a television, medicine and keys, and beat Edwin Rose with the brick. Ninety-two year old Edwin Rose had been in reasonably good health prior to the beating. He was hospitalized and his condition improved from December 13 through December 16. Surgery was performed on December 16 in order to repair an open fracture on his mandible so that he would be able to eat solid food. His condition continued to improve until December 23 when his condition began to deteriorate. Edwin Rose died on December 31, 1981. Several physicians testified that his death was caused by the multiple trauma and complications resulting from it.

### I.

■ Appellant's first contention concerns the propriety of State's Instruction No. 6 which reads as follows:

"You are instructed that the doctrine of reasonable doubt applies only to the ultimate question of defendant's guilt or innocence and the essential facts which establish it, and the mere fact that some subsidiary matters are but imperfectly proved does not make it the duty of the jury to acquit, if the ultimate question of the defendant's guilt is established beyond a reasonable doubt."

Appellant argued to the trial court that this instruction was erroneous because it would have confused the jury and because it appears to make less significant various elements of the crime as opposed to the ultimate question of guilt or innocence. Appellant's objection did not prevail and the instruction was given.

The instruction here is identical to the one this Court approved in *Gramm v. State*, (1978) 268 Ind. 492, 376 N.E.2d 1120.

Since State's Instruction No. 6 in this case was identical to the one approved in *Gramm, supra*, and because State's Instruction No. 6 was followed by several other instructions informing the jury that the State must prove every element of the crime beyond a reasonable doubt, State's Instruction No. 6 was not erroneous and would not have misled or misdirected the jury as contended.

### II.

■ An individual who inflicts injury upon another is deemed by law to be guilty of homicide if the injury contributed mediately or immediately to the death of that other person. *Miller v. State*, (1975) 263 Ind. 595, 335 N.E.2d 206. A defendant will not be held criminally responsible for the death of another unless the variation between the result intended or hazarded and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result. LaFAVE and SCOTT, Criminal Law, p. 246.

The sequence of events in this case is as follows: Appellant beat the victim with a brick over the head, face, and chest. The victim was hospitalized. The victim had surgery to reduce a fracture of the mandible suffered in the beating. The victim's condition worsened. Two weeks after the beating the victim died of congestive heart failure and lobar pneumonia.

The evidence connecting the death with the beating is given by three physicians. The family physician, Dr. John Nill, testified:

"Q. Okay. With your care of the patient, did you eventually arrive at a

conclusion as to the cause of the death?

A. I put down on the, on my terminal note that the cause of death would be congestive heart failure on an arteriosclerotic heart basis, but certainly aggravated and precipitated by the very severe beating that he had causing him to have the lacerations of the forehead, fractured right mandible, moderate concussion, et cetera."

Doctor Sisra Ranasinghe, a pathologist, who conducted the post mortem examination of the victim, gave this testimony:

"Q. Okay, Doctor, based upon your examination and your education and experience, within a reasonable medical certainty, did Edwin T. Rose die of the findings that you have told this Jury about secondary to multiple trauma, multiple beatings?

A. I did not see this person alive. From my observations at the time of the autopsy, the antecedent factors to all these complications is the multiple trauma. . . .

Q. Okay. Within a reasonable medical certainty, would Edwin T. Rose have died without this multiple beating to the head and chest area?

A. He certainly may have died, but not under these circumstances. He has lived to be 92 years, so he must have had something going on with him to survive so long. So I believe he could have lived longer if this situation did not arise."

Doctor Roland Ahlbrand, Coroner, also testified concerning the cause of death:

"Q. Now Doctor, within a reasonable medical certainty based upon Doctor Ranasinghe's post mortem and your attendance, and within your experience, Edwin T. Rose died of lobar pneumonia and other matters, were those due to the multiple trauma or beatings to Mr. Rose?

A. Yes.

Q. Do you have any doubt about that, sir?

A. None.

Q. Now within a reasonable medical certainty, would Edwin T. Rose have died on December 31, 1981 without suffering from these multiple beatings?

A. No."

Appellant contends that the surgery on the fractured mandible was unnecessary and worsened the victim's condition; and as a result, the intervening cause of surgery relieves him of criminal responsibility for the victim's death. This argument must fail. It was determined at trial that the victim was in stable condition before the surgery and that the surgery was necessary in order to prevent a possible life threatening infection. In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold the appellant responsible for the actual result. Here the intervening cause of surgery was not extraordinary because the injury necessitated it. As a result it is fair to hold the appellant responsible for the victim's death.

There is sufficient evidence from which the jury could infer that the beating inflicted upon the victim contributed mediately or immediately to his death.

The convictions are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.