Simone WILSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8711–CR–1019.

Supreme Court of Indiana.

May 10, 1989.

Scott L. King, Appellate Public Defender, Lake Superior Court, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. and John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which she received a sentence of fifty (50) years, and Robbery, a Class A felony. However, the judge did not impose sentence on the robbery conviction.

The facts are: Appellant was a dancer at Fanny's Lounge in the city of Gary. On several occasions, the victim, Raymond Cook, would come to the lounge near closing time and leave with appellant. According to appellant, the first two or three nights she left with Cook he drove her to her apartment and dropped her off. On November 23, 1986 at approximately 3:00 a.m., appellant was seen leaving with Cook in his car. Appellant testified that on that occasion Cook took her to his and his wife's apartment located in Merrillville where he proceeded to proposition her to engage in sexual relations with him and his wife.

At about that time, a neighbor, Deloris Zale, observed a woman speaking through a partially open door at Cook's apartment, repeatedly saying, "Give me my money, give me my money." She also heard Cook state that he had no money and that the woman had taken his wallet. Later that morning Zale observed blood on the door to Cook's apartment.

David Cook testified that he was the son of the victim, and after receiving a call from his sister that morning, he dressed and went to his parents' apartment to check on them. He stated that his mother suffered from Alzheimer's Disease, and he had difficulty telling her who he was and getting her to open the door. However, when she finally let him in, he observed his father in a severely beaten condition. He stated that there was blood on the floor, the back of the door, parts of the ceiling, and on a closet door. A chair was knocked over and items were scattered about. There was a broken dish on the floor and his father's eyeglasses and dentures were also on the floor.

Appellant's version of the encounter was that when Cook propositioned her to have sex with him and his wife it surprised her, and when she started to leave, Cook put his hand in her pocket and withdrew some money. When she objected, Cook accused her of taking his wallet, which she denied. Later, Cook's wallet was recovered by a passerby in the 5800 block of Broadway in Merrillville.

At 4:55 a.m., Officer Peter Mokol of the Lake County Police Department was working as a security guard at a restaurant located at 50th Avenue and Broadway in Merrillville when he saw appellant sitting on the floor of the foyer, sobbing and covered with blood. He heard her say that someone "wouldn't hurt me again." He engaged her in conversation in an effort to determine if she was injured and what had occurred. He observed two gold rings in her hand, one of which was later identified as missing from Cook's hand. Appellant told Officer Mokol that she had taken the

rings from her boyfriend and that her injuries were due to having been thrown from her boyfriend's car after a fight. Mokol also observed injuries to the knuckles of appellant's hands. Appellant gave Mokol her address and left.

The following day, Merrillville Police Detective DeHaven went to the address given Mokol by appellant and recovered, among other items, Cook's rings. Lula Bondor, appellant's landlady, related that on the morning of November 23, 1986, appellant told her that she had beaten an old white man for stealing money from her. Earlie Townsell, a fellow employee of appellant's, testified that after having seen appellant leave Fanny's the morning of November 23, 1986, in Cook's company, appellant did not return to work for several weeks. When she did, she excused her absence by explaining that she had been recovering from injuries sustained in a fight with Cook. Appellant told Townsell that after arriving at Cook's apartment she became frightened upon seeing Cook's wife and that Cook took money from her pocket as she attempted to leave. Appellant then related and demonstrated how she beat and kicked Cook. Cook was hospitalized from November 23, 1986 until he died on December 5, 1986.

A pathologist testified that death was caused from internal bleeding from ruptured blood vessels in appellant's throat and stomach. He testified that he could not tell whether the rupture was caused by external trauma or tubes placed in Cook's throat and stomach by doctors in an attempt to save his life. He stated that the blood vessels in Cook's throat were enlarged by reason of cirrhosis of the liver and that he had a peptic ulcer which was also bleeding, possibly because of impact from the tubes.

■ Appellant claims the evidence is insufficient to establish robbery. Although appellant claimed that Cook had given her the rings found in her possession, in view of other testimony, including appellant's statement to Officer Mokol that she had taken the rings from her boyfriend, there is ample evidence from which the jury could determine that a robbery had in fact occurred.

■ Appellant also contends there is not sufficient evidence to prove that her acts caused appellant's death. The fact that appellant conceded that she was in Cook's apartment that night and that they did have an altercation, coupled with Officer Mokol's testimony of the condition of appellant at the time he questioned her, including bruised and skinned knuckles, was ample evidence from which the jury could conclude that it was in fact appellant who had perpetrated the fatal attack upon Cook.

Appellant claims there was evidence of an independent intervening cause; that is, the possibility as testified to by the pathologist that Cook could have bled to death by reason of the insertion of tubes in his throat and stomach which could have ruptured blood vessels causing the internal bleeding which was the direct cause of his death. However, we have held that in order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to hold appellant responsible for the actual result. *Sims v. State* (1984), Ind., 466 N.E. 2d 24.

In *Sims*, the defendant had beaten the victim with a brick over his head, face, and chest. It was necessary to perform surgery; two weeks later, however, the victim died of congestive heart failure and lobar pneumonia. This Court held that the intervening cause of surgery was not extraordinary because it was necessitated by the injury. The facts in the *Sims* case closely parallel the facts of the case at bar. But for the beating sustained by Cook, it would have been unnecessary for doctors to have attempted to treat him, including the insertion of the tubes into his throat and stomach. We therefore hold that the intervening cause of the gastric tubing was not of such a nature as to constitute an independent intervening cause.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.