**Mattie ALLEN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 44A03–9010–CR–440.

Court of Appeals of Indiana, Third District.

Feb. 19, 1991.

Rehearing Denied April 19, 1991.

Theresa M. Heamon, Elkhart, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

1. IC 35–42–1–3.

STATON, Judge.

Mattie Allen appeals her convictions of voluntary manslaughter[1] and criminal recklessness,[2] for which she received sentences of 45 years and 5 years, respectively. She presents six issues for our review, restated as follows:

I. Was a search of the vehicle Mattie was driving when arrested conducted pursuant to a valid search warrant?

II. Did the State present sufficient evidence of causation of Harry Allen's death?

III. Did the trial court err in denying Mattie's motion for dismissal of the charge of criminal recklessness?

IV. Was Mattie erroneously convicted of Class C criminal recklessness when the information described criminal recklessness, a Class D felony?

V. Was Mattie denied the effective assistance of counsel?

VI. Were the verdicts unsupported by sufficient evidence having probative value?

We affirm the judgment and remand for resentencing.

On August 25, 1988, Mattie encountered her husband, Vann Allen, conversing with an unidentified woman in his car. The Allens, in separate vehicles, proceeded to the site of their motorhome, located on the property of Harry Allen. An altercation ensued, consistent with the couple's history of marital violence.

The evidence most favorable to the verdicts discloses that Mattie fired one or more shots in Vann's direction. He fled through the woods, tripped and sustained a laceration of his arm. Harry Allen, Vann's brother who lives nearby, left his house and, upon encountering Mattie sorting through papers from Vann's vehicle, demanded that she drop the papers and leave. Mattie replied that she jointly owned the vehicle, and had a right to investigate its contents. The two struggled, and Mattie ultimately lost control of the papers. Mat-

2. IC 35–42–2–2.

tie sustained a neck sprain, back sprain and shoulder contusion. Harry suffered a gunshot wound to the thigh.

Harry underwent surgery to repair urethral damage, and was thereafter considered to be in stable condition, without post-operative problems. The hospital staff administered no drugs to impede post-operative blood clotting. Three days later, Harry developed a pulmonary embolism and died.

## I.

### Search Warrant

Mattie initially contends that no probable cause existed for the search warrant authorizing the search of the 1982 Camaro which she was driving when arrested. She argues that there is no information in the supporting affidavit which creates probable cause to believe the automobile was involved in a crime or that relevant evidence of a crime would be contained therein.

Prior to issuance of a warrant, a magistrate must determine that there is probable cause for the search; that is, there must be a sufficient basis of fact to lead a reasonably prudent person to believe that a search of specified premises will reveal evidence of a crime. I.C. 35–33–5–2; *Kail v. State* (1988), Ind.App., 528 N.E.2d 799, *trans. denied.* In *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh. denied,* the court stated:

> "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

462 U.S. at 238, 103 S.Ct. at 2332.

■ The challenged affidavit, signed by Herbert Bergman, the Chief Deputy Sheriff of LaGrange County, set forth the sources of his information, and his reasons for considering that information credible. Vann and Richard Allen's report of a gunshot wound to Harry Allen was corrobo-

rated by statements of Dr. Shuishih Lee, who performed an autopsy upon Harry Allen. Vann Allen, the apparent victim of a criminal act, identified Mattie as the perpetrator. The affiant personally recovered two .22 caliber shell casings from the area at which the shooting reportedly occurred.

Additionally, the affidavit disclosed that Mattie Allen had been arrested on a charge of battery with a deadly weapon, and was operating a blue 1982 Chevrolet Camaro at the time of her arrest on August 29, 1988. The foregoing information could lead a reasonable person to believe that, three days after Harry's shooting, Mattie had a gun and ammunition concealed within an area under her control.

■ Moreover, were we to consider the warrant deficient because it did not state that the 1982 Camaro was the vehicle driven by Mattie to Harry's farm on August 25, 1988, the fruits of the search were properly admissible under the good faith exception to the federal exclusionary rule. In *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, *reh. denied,* the Court held that the exclusionary rule would not bar evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a neutral judge or magistrate, even if the warrant were later determined to lack probable cause. This exception has been adopted by our supreme court. *Blalock v. State* (1985), Ind., 483 N.E.2d 439.

The warrant authorizing the search of Mattie's vehicle was issued by Howard Petersen, Judge of LaGrange Circuit Court. It is free from any obvious defect which would alert a law enforcement officer to question its validity. The warrant was promptly executed by experienced law enforcement officers. The "good faith" exception to the exclusionary rule, recognized in *Blalock,* would clearly support admissibility of the handgun and ammunition recovered from Mattie's car, despite her assertion that the search warrant lacked a substantial factual basis.

## II.

### Causation

Mattie next contends that the State presented insufficient evidence that she caused the death of Harry Allen. She argues that the gunshot wound to Harry's thigh did not place him in a life-threatening situation, but that his death resulted from medical malpractice.

Dr. Shuishih Lee, who performed an autopsy upon Harry, testified that the gunshot wound did not directly cause his death, but led to a pulmonary embolism (blood clot) which was ultimately fatal. In her opinion, approximately 90% of embolisms develop in deep femoral veins, located in the leg or thigh area. She identified two reasons underlying their development: inflammation or tissue damage and inactivity slowing blood velocity. Dr. Lee considered both conditions present in Harry's case. *Record*, p. 1514–15.

Dr. Lee testified that drugs could be administered to impede post-operative blood clotting, but found no evidence that Harry had received such medication following his initial surgery. *Record*, p. 1521–22. Mattie argues that the hospital's failure to administer an anti-clotting medication constitutes an intervening cause of Harry's death, absolving her of criminal responsibility therefor.

■ An intervening cause which breaks the chain of criminal responsibility must be so extraordinary that it would be unfair to hold the accused responsible for the result. *Sims v. State* (1984), Ind., 466 N.E.2d 24. The *Sims* court held that the victim's post-operative pneumonia and heart failure were not an extraordinary intervening cause of death, where injuries inflicted by Sims necessitated the surgery. One who inflicts injury upon another is deemed to be guilty of homicide if the injury contributed mediately or immediately to the victim's death. *Id.* at 25–26.

In *Ford v. State* (1988), Ind., 521 N.E.2d 1309, a gunshot victim died of post-surgical complications after refusing a blood transfusion. Finding the appellant's intervening cause argument unpersuasive, the court stated: "The fact that other causes contribute to the death does not relieve the actor from responsibility." *Id.* at 1310. *See also Gibson v. State* (1987), Ind., 515 N.E.2d 492, 496 (appellant held responsible for victim's death two weeks after beating, although she contracted a rare bacterial infection after surgery); *Manna v. State* (1982), Ind., 440 N.E.2d 473 (appellant who rendered victim unconscious and left him on the roadway was responsible for his death when an automobile subsequently struck him).

■ Death following a gunshot wound, even where a lack of appropriate medical care is a contributing factor, is not an extraordinary or unforeseeable result such as to absolve the actor of liability. The State did not fail to present sufficient evidence that Mattie caused Harry's death.

## III.

### Dismissal of Criminal Recklessness Charge

■ Next, Mattie contends that the trial court erred in denying her motion for involuntary dismissal of Count III, criminal recklessness, alleging failure of the State to present evidence on an essential element of the charged crime. Mattie argues that she was never identified as the perpetrator of any act which placed Vann Allen in danger.

Vann testified concerning the events of August 25, 1988. He stated that he was in his car, conversing with a friend when Mattie drove into the Publix parking lot. He recognized her and her vehicle, of which she was apparently the sole occupant. The vehicle followed Vann as he proceeded to Harry's farm. Vann stated that he saw a car arrive at Harry's and that the occupant was Mattie. The following testimony was then elicited:

Q. How did you know it was Mattie?
A. Because the reason that I knew it was Mattie was because I heard these gunshots being fired at me.
Q. How many gunshots did you hear?
A. Three, or approximately three or more.

Q. Okay, did you see her?

A. I knew it was her.

Q. What did you do when you heard those gunshots?

A. I was running. I was running toward the woods.

Q. You didn't turn around and see if it was Mattie Allen firing at you?

A. Well, if I had of, I would have been dead. You wouldn't be talking to me today.

*Record,* p. 1060.

■ When a motion for judgment on the evidence is at issue in a criminal proceeding, the judge may only review the evidence to determine if there is a total absence of evidence on an element or evidence susceptible of only one inference which is in favor of the defendant. If there is evidence of each element or inconsistent inferences are possible, the motion should be denied. *State v. Goodrich* (1986), Ind.App., 498 N.E.2d 994, 996–97.

Although Vann admittedly did not observe Mattie during the time shots were being fired, the evidence supported a reasonable inference that the person (identified as Mattie) who had encountered Vann in a parking lot and followed him over various country roads, subsequently arriving at Harry's farm, was the person who fired the shots immediately after the vehicle's appearance at the farm. The trial court properly denied Mattie's motion to dismiss Count III.

## IV.

### *Conviction of Class C Felony*

■ Mattie asserts that fundamental error occurred when she was convicted of criminal recklessness, a Class C felony, a crime not charged, nor a lesser included offense of the crime charged. An information was filed entitled "Information for Criminal Recklessness by Means of A Deadly Weapon, Class C. Felony." However, the body of the charge contains Class D felony language, pursuant to I.C. 35–42–2–2(b), as follows: "Mattie M. Allen also known as Mattie Slone also known as Mattie Jacobs did then and there intentionally commit an act, to-wit: firing a certain deadly weapon, to-wit: a pistol loaded with gunpowder and bullets in the presence of and direction of Vann E. Allen, which act created a substantial risk of bodily injury to said Vann E. Allen." *Record,* p. 15.

Contrary to Mattie's assertion, she was not convicted of criminal recklessness, a Class C felony. The jury was instructed to determine whether Mattie was guilty of committing the elements of a Class D felony. *Record,* p. 519. However, in pronouncing sentence, the court described Count III as a "C" felony, and sentenced Mattie accordingly. As the jury's verdict only supports sentencing upon a conviction for criminal recklessness as a Class D felony, we remand for resentencing on Count III.

■ The record further discloses that resentencing upon Mattie's conviction for voluntary manslaughter is appropriate.

Mattie's sentencing hearing was conducted on August 11, 1989. The trial court had previously granted a continuance to permit her neurological evaluation. Mattie's attorney, who had received the neurological report on August 9, requested an additional continuance to allow him to confer with the neurologist, and facilitate his exploration of grounds for a new trial. Counsel's request was denied; however, the court suggested that new information could be attached to a Motion to Correct Errors, a Motion to Modify Sentence, or a habeas corpus petition. None of these options were pursued, apparently due to counsel's withdrawal at the conclusion of sentencing. The trial court then asked Mattie if she wished to *appeal* her conviction, to which she replied affirmatively. *Record,* p. 1793.

The neurological report was attached to the Presentence Report. The report indicated that the possible cause of Mattie's abnormal EEG was a low grade seizure disorder, consistent with a history of loss of consciousness. Mattie's attorney postulated that Mattie had suffered some brain damage during prior beatings, but he had been unable to discuss his theory with the neurologist.

The Presentence Report indicated that Mattie had acted under strong provocation, inasmuch as Harry Allen had physically accosted her on the occasion of his shooting. A medical report detailing her injuries was attached. The presentence report additionally disclosed that Mattie suffered from battered women's syndrome, having been repeatedly beaten by Vann Allen and threatened with death.

The conclusion that Mattie was a battered spouse was supported by medical records detailing her hospitalization on February 27, 1988. At that time, Mattie received 13 staples to close a head wound. She had indicated that Vann made repeated threats to kill her and her children, boasting that he would enlist his brother Harry's aid to do so.

Also included in the report were comments regarding Vann's alleged repeated physical and sexual abuse of his children. Ostensibly, Mattie's head wound had been incurred as she prevented Vann's striking their 6 year old daughter with a table leg. Depositions from Mattie's children also detailed incidents of abuse and threats (the children were unavailable to testify in person, having been "kidnapped" from Vann's home by their adult brother, presumably motivated by a desire to protect them.)

The presentence report preparer summarized: "Mattie appears to have been brutalized and terrorized into this position and stance by his [Vann's] violence and threats and had not chosen it as her preference or her own free will." *Record*, p. 594. A minimum sentence was recommended.

The Indiana Department of Corrections evaluation also included a recommendation by Dr. Shriver that Mattie receive the minimum sentence or a suspended sentence (assuming a new trial was unavailable to her). He found it "remarkable" that she had been convicted of an offense greater than involuntary manslaughter or reckless homicide. *Record*, p. 641. He noted that her symptoms (chronic headache, blackouts, dreamlike states) could be related to a brain injury, and suggested further medical evaluation.

In imposing sentence, the trial court stated: "[T]here is [sic] a number of mitigating factors and aggravating factors." *Record*, p. 1789. The court made references to the previous history of marital arguments, Mattie's receipt of physical violence, her Appalachian background and lack of education, her need for treatment, her lack of a handgun license, and her apparent lack of remorse. He also noted her "slight" criminal background (Mattie had been publicly intoxicated and in contempt of court). He stated that he attempted to balance the aggravators against her lack of education. *Record*, p. 1790–91. He imposed a 45 year sentence for voluntary manslaughter and a 5 year sentence for criminal recklessness, then suspended the latter. Applicable fines were imposed, but suspended.

 The trial court has the discretion to determine whether the presumptive sentence for a crime will be increased or decreased. However, when a presumptive sentence is enhanced, the record must disclose the factors in justification thereof. The trial court's statement should identify all significant mitigating and aggravating circumstances, as a failure to find either when clearly supported by the record may give rise to the belief that they were overlooked, thus not properly considered. *Boyd v. State* (1991), Ind., 564 N.E.2d 519, 524–525; *Jones v. State* (1984), Ind., 467 N.E.2d 681, 683.

In the instant case, significant mitigating factors supported by the record and identified in the presentence report, e.g., provocation, Mattie's possible brain damage, and hardship to Mattie's children resulting from her incarceration, were not addressed. Further, after imposing an aggravated sentence for voluntary manslaughter (the presumptive sentence being 30 years) the trial court stated: "One of the reasons that we're going to the Department of Corrections here is, they have recommended that you get battered woman help, and uh—and maybe Alanon help." *Record*, p. 1793. The court had previously cited her "need for rehabilitative treatment." *Record*, p. 1790–91. Apparently, Mattie's prior do-

mestic victimization was used to *aggravate* her sentence.

As the trial court's procedural recommendations for sentence reconsideration were not pursued by counsel, and the record of sentencing indicates that pertinent information may have been overlooked, we remand for reconsideration of the sentence imposed.

## V.

### *Ineffective Assistance of Counsel*

Mattie claims that she was denied the effective assistance of counsel and that, but for his errors, there was a reasonable probability that the trial would have ended differently. She assigns as error counsel's failure to consult a forensic pathologist regarding causation of Harry's death, failure to tender jury instructions on causation, and failure to object to the court's instruction on intervening factors. Additionally, she asserts that counsel unreasonably delayed his request for a neurological examination until after trial.

▮▮▮▮ The appropriate standard to determine effectiveness of counsel was outlined in *Steele v. State* (1989), Ind., 536 N.E.2d 292:

> Reversal for ineffective assistance of counsel is appropriate in cases where a defendant shows both (a) that counsel's performance fell below an objective standard of reasonableness, and (b) that said deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. A claim of ineffective assistance must identify the claimed errors of counsel, so that the court may determine whether, in light of all circumstances, the counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, the defendant must further show a reasonable probability that it altered the outcome of the case. *Strickland, supra; Chupp v. State* (1987), Ind., 509 N.E.2d 835; *Burr v. State* (1986), Ind., 492 N.E.2d 306; *Price v. State* (1985), Ind., 482 N.E.2d 719; *Jackson v. State* (1985), Ind., 483 N.E.2d 1374; *Seaton v. State* (1985), Ind., 478 N.E.2d 51.

*Id.* at 293.

▮▮▮▮ Applying the foregoing standard, we do not find that Mattie's trial counsel was incompetent or that the trial's outcome was probably altered by his performance. Although a forensic pathologist was not obtained by Mattie's counsel, expert testimony on causation was elicited from Dr. Shuishih Lee. Dr. Lee testified that a blood clot was the direct cause of Harry's death, and that factors such as inactivity and tissue inflammation contributed to its formation. She further identified drugs which were available to impede post-surgical blood clotting, and indicated that the hospital staff apparently administered no such drug to Harry following his initial surgery.

Moreover, had experts been obtained to definitively opine that medical malpractice contributed to Harry's death, Mattie's culpability would not have been altered. One who inflicts a wound which endangers the life of another is not relieved of responsibility therefor by subsequent improper medical treatment of the victim. *Hall v. State* (1928), 199 Ind. 592, 159 N.E. 420.

▮▮▮▮▮ Mattie's assertion that her attorney permitted erroneous instruction on causation is unfounded. Jury instructions are to be read as a whole to determine whether the jury has been misled concerning applicable law. *Jewell v. State* (1989), Ind., 539 N.E.2d 959, 961-2. The challenged instruction, read in conjunction with the immediately preceding instruction, is in

accord with Indiana law. *See, e.g., Sims, supra.*

■ Finally, counsel's failure to request Mattie's neurological examination prior to trial does not persuade us that his assistance fell below that reasonable under prevailing professional norms. There is no indication that counsel was aware of Mattie's neurological abnormality prior to trial. The results of a physical examination performed upon Mattie's initial incarceration disclosed no information to alert him to the possibility that neurological testing was advisable. When medical professionals conducting post-trial evaluations indicated the need for further testing, counsel made a timely request in accordance with their recommendations. Upon receipt of the neurologist's report, counsel requested a continuance to explore grounds for a new trial.

We do not, through the use of hindsight, conclude that an attorney who lacks medical training rendered ineffective assistance to his client by a failure to recognize symptoms of neurological abnormality.

## VI.

### *Sufficiency of the Evidence*

Finally, Mattie contends that the State presented insufficient evidence to support either her conviction for voluntary manslaughter or her conviction for criminal recklessness.

When reviewing a claim of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses, but consider only the evidence most favorable to the State, together with reasonable inferences to be drawn therefrom. If there exists substantial evidence of probative value from which the fact-finder could have reasonably inferred guilt beyond a reasonable doubt, the conviction will not be reversed. *McDonald v. State* (1989), Ind., 536 N.E.2d 287, 289.

■ Vann Allen testified that Mattie, whom he knew to possess a gun, pursued him to the home of Harry Allen on August 25, 1988. Vann fled through the woods, tripped and sustained an injury requiring medical treatment. As he fled, he heard gunshots. Mattie admitted to shooting her gun near Vann. *Record,* p. 1669. A reasonable inference could be drawn by a fact-finder that Mattie, while armed with a deadly weapon, created a substantial risk of bodily injury to Vann.

■ Roseanne Allen testified that Harry pulled Mattie from Vann's car and knocked papers from her hand, but subsequently walked away as Mattie returned to her car. Roseanne stated that she began to retrieve the papers from the ground. While thus engaged, she heard Mattie threaten Harry, followed by a gunshot.

There was sufficient evidence presented by the State to negate Mattie's claim of self-defense and to establish the elements of voluntary manslaughter beyond a reasonable doubt.

Affirmed; remanded for resentencing.

HOFFMAN and SHIELDS, P.JJ., concur.