## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

John Mazurak
Westville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Mazurak,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2016

Court of Appeals Case No.
02A03-1502-PC-55

Appeal from the Allan Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D04-1404-PC-110

**Robb, Judge.**

# Case Summary and Issues

[1] John Mazurak, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief, raising the following restated issues: (1) whether Mazurak received ineffective assistance of trial counsel, and (2) whether the post-conviction judge committed misconduct. Concluding Mazurak did not receive ineffective assistance of counsel and the post-conviction judge committed no misconduct, we affirm the denial of Mazurak's petition for post-conviction relief.

# Facts and Procedural History

[2] On July 13, 2012, a Kroger loss prevention officer ("LPO") noticed a man later identified as Mazurak adjusting his pants in an aisle of the grocery store. The only item in Mazurak's cart was a bottle of water. The LPO followed Mazurak and observed Mazurak conceal a can of cherries in his pants. Mazurak proceeded to a self-checkout terminal, where he paid only for the bottle of water. The LPO stopped Mazurak as he was exiting the store. Mazurak removed over fourteen dollars of merchandise from his pants and fled on foot. The police apprehended Mazurak in the parking lot, and the State charged him with theft as a Class D felony.

[3] On January 9, 2013, Mazurak and the State entered into a plea agreement, which left sentencing to the discretion of the trial court but capped the executed portion of Mazurak's sentence at 183 days. The trial court conducted a guilty

plea hearing, at which time the trial court questioned Mazurak and advised Mazurak of the rights he was waiving by pleading guilty, including the right to appeal his sentence.[1] When the trial court asked Mazurak if he had ever received treatment for "any mental illness" or if he was currently suffering from "any mental or emotional disability," Mazurak said, "No." Tr. of Guilty Plea Hr'g at 4. When the trial court asked Mazurak if he understood he was admitting to the crime charged by pleading guilty, Mazurak replied, "I put the two dollar jar of jam in my pocket which is theft." *Id.* at 6. The trial court took the plea agreement under advisement, pending receipt of the presentence investigation report, and scheduled a sentencing hearing for February 4, 2013.

[4] Mazurak failed to appear for sentencing, and the trial court issued a warrant for his arrest. Mazurak was arrested several months later. At the sentencing hearing held on June 25, 2013, Mazurak informed the trial court he suffers from "blackout spells" caused by permanent neurological damage:

> It was totally unintentional and the bottom line is I have a infract [sic] that causes that, my forgetfulness, which is a physical organic condition and it just—I do that . . . . I have medical records. I went to a lot of MRI's and all that kind of thing to find

---

[1] When a defendant pleads guilty under the terms of an agreement that provides for a sentencing cap or range, the defendant may subsequently appeal his or her sentence because the trial court exercised some amount of discretion in determining an appropriate sentence. *Rivera v. State*, 851 N.E.2d 299, 301 (Ind. 2006). Here, Mazurak waived the right to appellate review pursuant to the terms of the plea agreement he entered with the State. Transcript of Guilty Plea Hearing at 5-6; *see also Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008) (holding a defendant may waive the right to appeal his or her sentence as part of a written plea agreement).

out why it is that I can just blank out and I do. Quite kind of like a sleep walk but it doesn't last very long . . . .

Transcript of Sentencing Hearing at 9. Mazurak offered no evidence documenting his condition.

The trial court accepted the plea agreement, entered judgment of conviction for theft as a Class D felony, and sentenced Mazurak to three years in the Department of Correction, with 183 days executed and the remainder suspended to probation. Mazurak filed his first pro se petition for post-conviction relief in 2013, which the post-conviction court dismissed without prejudice. He filed a second pro se petition in 2014, alleging he received ineffective assistance of trial counsel and that the trial court, in various ways, abused its discretion. The post-conviction court ordered Mazurak submit his case by affidavit pursuant to Indiana Post-Conviction Rule 1(9)(b). Mazurak moved to vacate the court's order and set an evidentiary hearing, but he also filed a "Reply to the State[']s Answer to Post Conviction Relief," which the post-conviction court concluded "appears to serve the purpose of submission of [Mazurak's] case by affidavit." Appellant's Brief at 20 (Findings of Fact at ¶ 3). On January 30, 2015, the post-conviction court issued written findings of fact and conclusions of law in an order denying Mazurak's petition without an evidentiary hearing. Mazurak now appeals the denial of his petition for post-conviction relief. Additional facts will be provided as necessary.

# Discussion and Decision

# I.  Denial of Post-Conviction Relief

## A.  Standard of Review

Post-conviction proceedings "provide a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal." *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013).  The petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5).  A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision."  *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citation omitted).

In reviewing a denial of post-conviction relief, we neither reweigh the evidence nor assess the credibility of witnesses.  *State v. Holmes*, 728 N.E.2d 164, 169 (Ind. 2000), *cert. denied*, 532 U.S. 1067 (2001).  We consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence.  *Id.*  We accept the post-conviction court's factual findings unless clearly erroneous, but we do not defer to its legal conclusions.  *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002) (citing Ind. Trial Rule 52(A)), *cert. denied*, 540 U.S. 830 (2003).

## B.  Ineffective Assistance of Counsel

Mazurak contends the post-conviction court erred in denying his petition for post-conviction relief, which alleged he received ineffective assistance of trial

counsel. The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. Counsel's performance was deficient if it fell below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 688.

[9] As for the prejudice prong, there are two types of ineffective assistance claims available to a defendant who pleaded guilty: "(1) failure to advise the defendant on an issue that impairs or overlooks a defense and (2) an incorrect advisement of penal consequences." *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). For claims relating to an overlooked defense, a petitioner must show a reasonable probability that he would have been acquitted had he gone to trial. *Id*. Where a petitioner claims counsel provided incorrect advice regarding penal consequences, the petitioner must show "the hypothetical reasonable defendant would have elected to go to trial if properly advised." *Segura v. State*, 749 N.E.2d 500, 507 (Ind. 2001).

[10] Mazurak argues counsel rendered ineffective assistance by failing to: (1) raise an automatism defense, (2) challenge the constitutionality of Indiana's theft statute, (3) object to the lack of a factual basis for Mazurak's guilty plea, and (4)

advise Mazurak of the trial court's discretion to impose a period of probation under the terms of the plea agreement.[2]  We will address each allegation in turn.

### 1. Automatism Defense

Mazurak claims he suffers from "blackout spells," which "disconnect the conscious mind thought processes from the rest of the brain's functions . . . ." Appellant's Br. at 12.  Mazurak insists he was experiencing a "blackout spell" at the time of the offense and that counsel knew of his condition.  Mazurak now contends counsel was ineffective by failing to raise an automatism defense, but in his petition for post-conviction relief, Mazurak argued counsel was ineffective by failing to raise an insanity defense.  In either case, Mazurak claims counsel overlooked a defense.

Automatism is a state of unconscious behavior that "need not be the result of a disease or defect of the mind." *McClain v. State*, 678 N.E.2d 104, 106, 108 (Ind. 1997) (citation omitted).  In Indiana, automatism is a recognized defense separate from the insanity defense. *Id.* at 108-09.  Where unconscious behavior manifests in a person of sound mind, evidence of automatism may show a lack of criminal intent. *Id.* at 107-08 (citing Ind. Code § 35-41-2-1).  To the extent a

---

[2] Mazurak also argues counsel was ineffective by failing to move to dismiss the allegedly defective charging information.  Because this issue was not raised in Mazurak's petition for post-conviction relief, this claim is now unavailable.  P-C.R. 1(8) (stating all grounds for relief must be raised in the original petition for post-conviction relief); *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), *cert. denied*, 535 U.S. 1061 (2002).

person's actions are attributable to a "mental disease or defect,"[3] the insanity defense applies. *Id.* at 108 (citing Ind. Code § 35-41-3-6); *see also Reed v. State*, 693 N.E.2d 988, 991-92 (Ind. Ct. App. 1998) (holding a "small stroke" causing disorientation and memory lapses was not a "mental disease or defect" within the meaning of the insanity statute and that evidence of the condition was relevant to issue of voluntariness).

[13] In support of his petition for post-conviction relief, Mazurak submitted several unauthenticated medical records from 2011. The post-conviction court concluded the results of an MRI show "Mazurak's brain was abnormal in some respects, but does not show that he had any mental disease or defect that rendered him 'unable to appreciate the wrongfulness of his conduct at the time of the offense.'" Br. of Appellant at 21 (Findings of Fact at ¶ 5) (citing Ind. Code § 35-41-3-6). The post-conviction court further concluded there was no evidence suggesting Mazurak's counsel knew or should have known an insanity defense would be successful, noting Mazurak first raised the issue at sentencing and had previously told the trial court, on the record, that he did not suffer from any mental illness or disability. *Id.* at 20-21 (Findings of Fact at ¶ 4-¶ 5) (citing Tr. of Guilty Plea Hr'g at 4).

---

[3] "As used in [Indiana Code section 35-41-3-6], 'mental disease or defect' means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind. Code § 35-41-3-6(b).

[14] Under these circumstances, we cannot say the evidence "unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Wilkes*, 984 N.E.2d at 1240. To the extent Mazurak argues counsel should have raised an automatism defense, the claim is unavailable because he did not raise the issue in his original petition. P-C.R. 1(8) (stating all grounds for relief must be raised in the original petition for post-conviction relief); *Allen*, 749 N.E.2d at 1171 ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.").

[15] To the extent Mazurak argues counsel should have raised an insanity defense, Mazurak presented no evidence suggesting counsel knew or should have known of his condition prior to the sentencing hearing, which was held over six months after the guilty plea hearing. *See Allen v. State*, 566 N.E.2d 1047, 1055 (Ind. Ct. App. 1991) (concluding counsel's failure to request a neurological examination did not constitute deficient performance because there no was indication counsel was aware of defendant's neurological abnormality prior to trial). Moreover, Mazurak has failed show a reasonable probability an insanity defense would have been successful had he gone to trial. *See Manzano*, 12 N.E.3d at 326. Indiana Code section 35-41-3-6(a) provides, "A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct *at the time of the offense*." (emphasis added). The medical records submitted to the post-conviction court are from 2011, a year before Mazurak's arrest in the present case. The records do not establish Mazurak was experiencing a

"blackout spell" at the time of the offense, and even assuming the offense did occur during a "blackout spell," the records do not suggest Mazurak would have been unable to appreciate the wrongfulness of his conduct. At most, the records show Mazurak has a neurological abnormality of undetermined significance. The post-conviction court properly denied relief on this claim.

## 2. Constitutionality of Indiana's Theft Statute

[16] Mazurak contends the version of theft statute that was in effect at the time of his offense is unconstitutionally vague and that counsel was ineffective by overlooking this defense. At the time of Mazurak's offense, the statute provided,

> (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. However, the offense is a Class C felony if:
> > (1) the fair market value of the property is at least one hundred thousand dollars ($100,000) . . . .

Ind. Code § 35-43-4-2(a) (2009). Effective July 1, 2014, the theft statute was amended as part of the General Assembly's comprehensive revision of the criminal code. *See* Pub. L. No. 168-2014; Pub. L. No. 158-2013. The pertinent portion of the theft statute now reads,

> (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor. However, the offense is:
> > (1) a Level 6 felony if:

> (A) the value of the property is at least seven hundred fifty dollars ($750) and less than fifty thousand dollars ($50,000);
>
> * * *
>
> (2) a Level 5 felony if:
>
> > (A) the value of the property is at least fifty thousand dollars ($50,000) . . . .

Ind. Code § 35-43-4-2(a) (2014).

[17] Mazurak argues the 2014 amendments render the old version of the statute unconstitutionally vague. From what we can discern, Mazurak contends the amendments make it impossible for an ordinary person to know whether theft is a misdemeanor or a felony. His argument focuses on the addition of a value threshold making theft of property worth less than $750 a Class A misdemeanor. He also claims the statute criminalizes the taking of "worthless abandoned property." Appellant's Br. at 15.

[18] Any challenge to the validity of a statute must overcome a presumption of constitutionality. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007). A criminal statute may be invalidated for vagueness if it (1) fails to provide notice enabling an ordinary person to understand the conduct it prohibits, or (2) authorizes or encourages arbitrary or discriminatory enforcement. *Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)). However, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the case at hand. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). "The

defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness." *Id.*

[19]     The post-conviction court concluded,

> [Mazurak] admitted at the guilty plea hearing that the property he took did have a value of two dollars ($2.00), [Tr. of Guilty Plea Hr'g at 6, 11], so . . . there was no question of "valueless" property under the precise circumstances of his case. He correctly asserts that, under present law, theft of property worth less than seven hundred fifty dollars ($750.00) would be a misdemeanor. However, he fails to note that savings clauses enacted in connection with the revision of Indiana's criminal code (effective July 1, 2014) make it clear that the revision does not affect penalties incurred before the effective date of the new code, and that the doctrine of amelioration is not to be applied to such penalties. [Ind. Code § 1-1-5.5-21, -22]. The new definition of theft as a felony (including a value of at least $750.00) does not retroactively render the old definition (with no specified dollar value) unclear or unintelligible to persons of ordinary intelligence.

Appellant's Br. at 23 (Conclusions of Law at ¶ 4).

[20]     We agree with the post-conviction court, and we would further note both versions of the theft statute require, as an element of the offense, "unauthorized control over property *of another person*, with intent to deprive the other person of any part of *its value or use*." Ind. Code § 35-43-4-2 (emphasis added). We therefore fail to comprehend how either version could be construed as criminalizing the taking of "worthless abandoned property." Appellant's Br. at 15. And in this particular case, Mazurak admitted his actions constituted theft.

Prior to the trial court requesting a factual basis at the guilty plea hearing, Mazurak twice blurted out, "I put the two dollar jar of jam in my pocket *which is theft*." Tr. of Guilty Plea Hr'g at 6 (emphasis added).[4] Because a vagueness challenge to the theft statute would have been meritless, the post-conviction court properly denied relief on this claim of ineffective assistance. *Gordon v. State*, 645 N.E.2d 25, 28 (Ind. Ct. App. 1995) ("Counsel will not be deemed to be ineffective for failing to present meritless claims."), *trans. denied*.

### 3. Factual Basis for Mazurak's Guilty Plea

[21] Mazurak contends he pleaded innocent, not guilty, and counsel was ineffective by failing to object to the lack of a factual basis for his guilty plea. Mazurak points to two statements at the sentencing hearing: (1) his statement that the theft was "totally unintentional" due to his "blackout spells," and (2) his statement that he had "no choice" but to accept the standard terms of probation. Tr. of Sentencing Hr'g at 9, 12. During the guilty plea hearing six months before the sentencing hearing, Mazurak admitted guilt three separate

---

[4] To the extent Mazurak contends no theft occurred because the merchandise was unopened and never left the store, that argument goes to the sufficiency of the evidence to support his conviction. "It is well settled that a person who pleads guilty cannot challenge the propriety of the resulting conviction on direct appeal[,]" *Alvey v. State*, 911 N.E.2d 1248, 1249 (Ind. 2009), and the claim is now unavailable because

> post-conviction relief generally may not be based upon any "ground . . . knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction." A plea of guilty thus forecloses a post-conviction challenge to the facts adjudicated by the trial court's acceptance of the guilty plea and resulting conviction.

*Norris v. State*, 896 N.E.2d 1149, 1153 (Ind. 2008) (quoting P-C.R. 1(8)).

times and at no point claimed to be innocent.  *See* Tr. of Guilty Plea Hr'g at 6, 11.

[22]     In Indiana, "a trial court cannot accept a guilty plea from a defendant who pleads guilty and maintains his innocence at the same time." *Johnson v. State*, 734 N.E.2d 242, 245 (Ind. 2000) (citing *Ross v. State*, 456 N.E.2d 420, 423 (Ind. 1983)).  "A trial court may, however, accept a guilty plea from a defendant who pleads guilty in open court, but later protests his innocence." *Id.*  Even when a guilty plea has not been formally accepted, a trial court is not required to permit a defendant to withdraw his plea if he later claims innocence.  *Carter v. State*, 739 N.E.2d 126, 130-31 (Ind. 2000) (holding the trial court did not err by denying the defendant permission to withdraw his guilty plea at the sentencing hearing held a month after the guilty plea hearing).

[23]     The post-conviction court concluded, and we agree, "Mazurak is not entitled to post-conviction relief on the ground that he entered his guilty plea at one time and claimed to be innocent at another, without regard to which happened first." Appellant's Br. at 24 (Conclusions of Law at ¶ 7).  Furthermore, we are unpersuaded Mazurak's statements should be considered assertions of innocence.  Mazurak claiming he "unintentionally" shoplifted is not the same as Mazurak denying he did so, and Mazurak's statement regarding the terms of his probation had nothing to do with his guilt or innocence.  The post-conviction court properly denied relief on this claim.

### 4. *Mazurak's Sentence*

[24] Finally, Mazurak contends counsel was ineffective by failing to advise him of the trial court's discretion to impose a period of probation as part of the plea agreement. Mazurak pleaded guilty to a Class D felony and thus faced a maximum sentence of three years. Ind. Code § 35-50-2-7(a) (2012). The plea agreement left sentencing to the discretion of the trial court but capped the executed portion of Mazurak's sentence at 183 days. At the guilty plea hearing, the trial court advised Mazurak of the maximum penalty, and the following exchange took place:

> Q: I have in front of me a plea agreement in your case that appears to have your signature on it. Did you sign it?
>
> A: Yes Your Honor.
>
> Q: Did you read it before you signed it?
>
> A: Yes Your Honor.
>
> Q: Did you discuss it with your attorney before you signed it?
>
> A: Yes.
>
> Q: Mr. Mazurak, it reads that at sentencing the defendant, defendant's attorney, and state may present facts and argument but the Court has the final authority to impose a sentence it deems proper. However, the executed portion shall be no more than 183 days. The Court has the authority to impose . . . fines, costs, standard, or special conditions of probation it deems proper; pay $100.00 public defender fee; you waive your right to appeal the reasonableness of the sentence and the State has no

> objection to you serving any executed sentence in Home
> Detention or Work Release if eligible. Is that your
> understanding of the plea agreement?
>
> A:     Yes Your Honor.

Tr. of Guilty Plea Hr'g at 8-9.

[25]     The trial court sentenced Mazurak to three years in the Department of Correction, with 183 days executed and the remainder suspended to probation. When the trial court announced Mazurak's sentence, Mazurak stated he was under the impression the sentence could not exceed 183 days total. Tr. of Sentencing Hr'g at 11. Now, Mazurak argues counsel misadvised him of the terms of the plea agreement.[5] But even if this were so—and there is no evidence suggesting it is—the trial court advised Mazurak of the terms. Mazurak therefore cannot show "the hypothetical reasonable defendant would have elected to go to trial *if properly advised*." *Segura*, 749 N.E.2d at 507 (emphasis added). Mazurak was properly advised, even if he was not advised by counsel. The post-conviction court properly denied relief on this claim.

## II.  Judicial Misconduct

[26]     As best we can discern, Mazurak contends the post-conviction judge—who also presided over Mazurak's case at the trial court level—committed misconduct by

---

[5] To the extent Mazurak argues his sentence exceeded the terms of the plea agreement, we disagree. The terms of the plea agreement were clear, and the trial court did not depart from them.

ordering Mazurak to submit his case by affidavit and by exhibiting personal bias. Under Post-Conviction Rule 1(9)(b), "In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit." Mazurak proceeded pro se and provides no argument as to why an evidentiary hearing was required in his case. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring each contention in the appellant's brief be supported by cogent reasoning and citations to the authorities and parts of the record relied on). As to the alleged bias, Mazurak argues the judge openly exhibited personal bias against persons with mental disabilities. Mazurak cites no specific instances demonstrating bias, and we find no support for this allegation in the record. In short, these arguments are waived due to Mazurak's failure to comply with the appellate rules, but we would also note, waiver notwithstanding, we find no evidence of judicial misconduct in the record.

## Conclusion

[27] Mazurak received effective assistance of trial counsel, and the post-conviction judge did not commit misconduct. We therefore affirm the post-conviction court's denial of post-conviction relief.

[28] Affirmed.

Barnes, J., and Altice, J., concur.