ATTORNEY FOR APPELLANT
Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Matthew D. Fisher
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 79S05-0611-CR-451

ANGELA DUNCAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Tippecanoe Circuit Court, No. 79C01-0407-MR-01
The Honorable Donald L. Daniel, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 79A05-0505-CR-258

**November 21, 2006**

**Boehm, J.**

We hold that the Court of Appeals erred in finding a defendant's Blakely claim to be waived when it was included in her initial brief, which was filed after this Court's Smylie decision. We also hold that the Defendant's relatively minor prior convictions do not justify enhancing the sentence.

**Factual and Procedural Background**

In the spring of 2004, Christopher Lindsey, his fiancé, Natasha Green, Green's two-year old son, Noah, and the couple's son, G.L., lived in a Lafayette apartment. Lindsey's mother, Angela Duncan, had recently moved into the home, primarily to help take care of the children.

Duncan had a prescription for methadone, a drug originally marketed as an analgesic, i.e. a "painkiller," but now best known for its use in treating heroin addicts. Duncan testified that she took the drug for pain associated with "TMJ"—presumably temporomandibular joint syndrome—and a lower back disc problem.

On April 8, 2004, Duncan was home alone with the two children. She gave Noah one-fourth of one of her methadone tablets, and Noah died the next day from methadone poisoning. Shortly after Noah died, Duncan spoke with Lafayette Police Detective Timothy Payne but did not implicate herself in Noah's death. She was arrested on April 13 on outstanding warrants from another county. Detectives Payne and Donald Davidson Mirandized her and obtained a written waiver of rights form. After Davidson and Duncan had spoken for approximately three hours, Davidson received a telephone call from Lieutenant Wolfe of the Lafayette Police Department. Wolfe told Davidson that Lindsey had mentioned at a hearing in juvenile court that in the past Lindsey had given Noah and G.L. methadone. Although Wolfe's information later turned out to be false, Davidson believed it at the time. When he relayed to Duncan what he had just been told, Duncan began to cry. Detective Payne asked Duncan if she had "knowledge of someone giving Noah one of her methadone pills," and she replied that she had administered methadone to Noah by quartering one of her pills and giving it to him. She stated she did not think the drug would hurt Noah and that she had done this once before without any harm to the child.

Duncan was charged on April 20, 2004 with class A felony dealing in a schedule II controlled substance and class B felony neglect of a dependent. Charges of felony murder, class C felony reckless homicide, class B felony dealing in a schedule II controlled substance, and class C felony dealing in a schedule IV controlled substance, were added on July 15, 2004.

2

When it became apparent that Wolfe was incorrect in reporting that Lindsey had admitted to giving methadone to the children, Duncan filed a motion to suppress her statement to the detectives that she had given methadone to Noah. She claimed that her confession to the detectives was given to protect her son as a result of the false information she had been given. She reasoned that the statement was therefore involuntary. The trial court denied the motion, and the confession to the detectives was admitted at trial. At trial, Duncan maintained that she gave the confession in an effort to protect her son and that the false information she was given caused her to give a false confession.

The jury found Duncan guilty of felony murder, class C felony reckless homicide, class A felony dealing in a schedule II controlled substance, and class B felony neglect of a dependent. Duncan was sentenced on the felony murder conviction to sixty-two years in prison with ten years suspended—two years of community corrections, three years of supervised probation, and five years of unsupervised probation. The convictions for reckless homicide, dealing in a schedule II controlled substance, and neglect of a dependent were treated by the trial court as "merged" into the felony murder conviction. As we explained in Wright v. State, 828 N.E.2d 904, 906 (Ind. 2005), this is a common way to describe the court's decision not to impose sentence on lesser included offenses. See also Carter v. State, 750 N.E.2d 778, 781 & n.8 (Ind. 2001); Swafford v. State, 498 N.E.2d 1188, 1191 (Ind. 1986).

Duncan appealed, raising several issues, including whether there was sufficient evidence to support Duncan's felony murder conviction and whether her sentence violated Blakely v. Washington, 542 U.S. 296 (2004). The Court of Appeals affirmed the conviction and sentence in an unpublished memorandum opinion. Duncan v. State, No. 79A05-0505-CR-258, slip op. at 2 (Ind. Ct. App. December 16, 2005).

## I. Sufficiency of Evidence for Felony Murder Conviction

Duncan does not challenge her convictions for reckless homicide, dealing methadone, and neglect of a dependent, but she contends the evidence does not support the felony murder

charge.  The murder statute includes among the felony murder definitions killing another human being "while committing or attempting to commit . . . dealing in a . . . schedule II . . . controlled substance."  Ind. Code Ann. § 35-42-1-1(3)(C) (West Supp. 2006).[1]  Methadone is a schedule II substance.  The definition of "dealing" includes possession "with intent to deliver a controlled substance . . . classified in . . . schedule II . . . to a person under eighteen (18) years of age at least three (3) years junior to the person."  Ind. Code. § 35-48-4-2(2)(b) (2004).  Possession of methadone with intent to give it to a two-year old was therefore dealing.

The only issue as to this unusual form of felony murder is whether, as Duncan puts it, Noah's death occurred "during the commission of the dealing offense."  Duncan points out that Noah died one day after the delivery of methadone.  She argues that therefore he was not "killed during" the felony.  Duncan concedes that this Court has held that if an injury inflicted during the commission of a felony contributes "mediately or immediately" to the death of the victim then the defendant is guilty of homicide.  Sims v. State, 466 N.E.2d 24, 25-26 (Ind. 1984); Pittman v. State, 528 N.E.2d 67, 70 (Ind. 1988).  However, Duncan contends, "no injury was inflicted upon Noah" in the course of the dealing because Noah was not immediately harmed by the pill and the moment Duncan administered the pill to Noah she no longer possessed it with the requisite intent.

It is undisputed that Noah died of methadone poisoning.  The jury found that Duncan administered the drug and therefore committed the felony of "dealing."  In Sims, the victim died from congestive heart failure following surgery after sustaining a fractured jaw in the course of a burglary.  466 N.E.2d at 25-26.  In Pittman, the victim died after a post-surgical complication caused by the victim's obesity and post-operative immobility after being stabbed also in a burglary.  528 N.E.2d at 70.  Both Sims and Pittman dealt with a physical injury that in concert with other factors eventually led to death.  The injury to Noah in Duncan's case is ingesting a controlled substance, and that led directly, if not immediately, to death.  Although Noah died the next day, the dealing was the first step in a chain of events that led to his death.  This rendered the act "killing" that occurred "during" the felony even though the victim survived for some pe-

---

[1] The section appeared at 35-42-1-1(3)(B) at the time of Duncan's 2005 trial.  See P.L. 151-2006, § 16.

riod of time. Indeed, in both <u>Sims</u> and <u>Pittman</u> the death occurred over two weeks after the felony. <u>Sims</u>, 466 N.E.2d at 25-26; <u>Pittman</u>, 528 N.E.2d at 70.

Duncan also argues that the death was not a foreseeable consequence of her act. She cites this passage from Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 35, at 246 (1972), as this Court did in <u>Sims</u>:

> [E]ven when cause in fact is established, it must be determined that any variation between the result intended (with intent crimes) or hazarded (with reckless or negligent crimes) and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result. Variations may occur (a) as to the person who is harmed, or (b) as to the manner in which the harm occurs, or (c), in felony murder and misdemeanor-manslaughter cases, as to the type of harm.

Assuming this is a correct statement of the law, Noah's death is "not so extraordinary that it would be unfair to hold [Duncan] responsible." Duncan administered a prescription drug—indeed a schedule II controlled substance—to a two-year old with no prescription and no medical advice. Harmful consequences, including death, are not outside the range of predictable results.

In sum, we find sufficient evidence in the record to support the felony murder conviction.

## II. <u>Blakely</u> Challenge to Sentencing

Duncan was sentenced under the pre-2005 version of the sentencing statute. The trial court found Duncan's criminal history, the victim's young age, and the fact that Duncan was in a relationship of "custodial trust" with the victim to be aggravating factors. Conversely, the trial court found no mitigating circumstances. Duncan contends that her sentence was unconstitutional under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), because the court enhanced her sentence without the jury's finding beyond a reasonable doubt that the victim was under age twelve and that the relationship between Duncan and Noah was one of "custodial trust." Duncan concedes the conviction for dealing under the statute as charged necessarily implied a jury finding

that Noah was under the age of eighteen, but Duncan argues that this did not constitute a finding beyond a reasonable doubt that Noah was under the age of twelve. Similarly, although the jury found Duncan guilty of Neglect of a Dependent, which required proof that Duncan assumed the care of a dependent under Indiana Code section 35-46-1-4, Duncan argues there was no finding that she was in a "position of trust."

Smylie v. State, 823 N.E.2d 679 (Ind. 2005), held that Blakely applied to the sentencing scheme in place at the time of Duncan's sentencing. The Court of Appeals held that Duncan had waived any Blakely claim because she did not raise a Blakely objection at her sentencing hearing. Kincaid v. State, 837 N.E.2d 1008, 1010 (Ind. 2005), explained that "[w]hile it is, of course, true that a claim is not normally available for review on appeal unless first made at trial, this Court and the Court of Appeals review many claims of sentencing error without insisting that the claim first be presented to the trial judge." We held that appellants filing a direct appeal after Smylie "must raise a particular sentencing claim in his or her initial brief on direct appeal in order to receive review on the merits." Id. Duncan has met this requirement and has therefore preserved her claim. Accordingly, her Blakely claim must be addressed.

Notwithstanding its finding of waiver, the Court of Appeals went on to conclude that "among the aggravating circumstances considered by the trial court was Duncan's criminal history, which is explicitly excluded from the Blakely rule." Duncan, slip op. at 17. The court continued that because "[Duncan's] criminal history is relevant to her crime and properly given significant weight as an aggravator, we conclude that the trial court properly calculated and imposed Duncan's sentence." Id.

Although the Court of Appeals correctly noted that a single aggravating factor may support both an enhanced and consecutive sentence, this Court has held that the extent, if any, that a sentence should be enhanced turns on the weight of an individual's criminal history. Bryant v. State, 841 N.E.2d 1154, 1156 (Ind. 2006). "This weight is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." Id. In Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999), we held that although "a criminal

history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. . . . this criminal history does not command the same significance at a sentencing hearing for murder."

Duncan had been charged with, but not convicted of, class B misdemeanor public intoxication and class A criminal conversion. These two incidents are irrelevant under <u>Blakely</u> because only convictions are permissible as criminal history. <u>Blakely</u>, 542 U.S. at 301. Duncan's criminal history included convictions for misdemeanor driving under the influence, felony disrupting public services, and class C misdemeanor contributing to the delinquency of a minor. The Court of Appeals reasoned that because Duncan was convicted of felony murder with dealing as the felony, her previous convictions of substance abuse were "relevant to the instant crime." <u>Duncan</u>, slip op. at 13. The Court of Appeals found that because "Duncan's criminal history evinces an escalation of involvement with alcohol and controlled substances that culminated in the death, by methadone poisoning, of Noah," Duncan's criminal history was properly weighed as an aggravating factor by the trial court. <u>Id.</u> Duncan's record may indicate an escalating involvement with some form of substance abuse. But a mitigating factor is the unusual nature of this unusual form of felony murder. There is no evidence suggesting any intent to harm Noah. We agree with the Court of Appeals that her action was "irresponsible and reprehensible," but that falls far short of the conduct displayed by the vast majority of felony murders. <u>See e.g.</u>, <u>Mitchell v. State</u>, 844 N.E.2d 88, 89 (Ind. 2006) (three people die in armed robbery); <u>West v. State</u>, 755 N.E.2d 173, 177-78 (Ind. 2001) (stabbing co-worker over 50 times during theft of cash register).

In short, Duncan's criminal history does not justify an enhanced murder sentence. There is no dispute that Noah was two years old, and the jury undoubtedly accepted that fact. Nevertheless, it does not appear that this fact was admitted by Duncan or necessarily found by the jury. We have not addressed whether a custodian of an infant is necessarily in a "position of trust." This essentially is a legal question. In view of our disposition of Duncan's sentence in part III, we leave this issue unresolved.

### III. Sentence Revision

The Indiana Constitution gives this Court "in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed." Ind. Const. Art. VII, § 4. We currently exercise this power under the standard set forth in Indiana Appellate Rule 7(B): "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The presumptive sentence for murder is fifty-five years, and the minimum is forty-five years. I.C. § 35-50-2-3. Additional years can be "added for aggravating circumstances" but in the absence of aggravators, the presumptive sentence is appropriate. Smylie, 823 N.E.2d at 684 n.3 (quoting Ind. Code §§35-50-2-3 to 7 (2004)); Henderson v. State, 769 N.E.2d 172, 180 (Ind. 2002). Based on aggravating circumstances, the trial court sentenced Duncan to sixty-two years with ten years of that suspended. As explained above, Duncan's Blakely claim was not waived and two of the aggravating factors were not properly presented for jury determination. Duncan's prior convictions and charges were neither sufficiently weighty or similar to the current offense to justify enhancing the sentence.

This case presents a clear case of reckless homicide, a class C felony with a presumptive sentence of four years. It also meets the technical requirements of a dealing conviction, albeit one that seems at the margins of the conduct targeted by the statute. The presumptive sentence for dealing, a class A felony, is thirty years. By compounding the two crimes into a felony murder, the presumptive reaches fifty-five years, and that presumptive sentence was enhanced to sixty-two years based on some factors that raise Blakely issues and a relatively minor criminal history. We cannot conclude that Duncan's conduct was more serious than the typical murder. Indeed, it is only through a series of stretches that her conduct falls under the murder statute. Indiana Code section 35-50-2-2 prohibits suspending a murder sentence below the minimum sentence of forty-five years. Accordingly, we conclude that the appropriate sentence for Duncan is the minimum murder sentence of forty-five years, which is nevertheless fifteen years more than the presumptive sentence for dealing and forty-one years more than the presumptive sentence for reckless homicide.

## Conclusion

Duncan's sentence is revised to forty-five years.  We summarily affirm the Court of Appeals as to issues not addressed in this opinion.  <u>See</u> Appellate Rule 58(A).

Shepard, C.J., and Sullivan and Rucker, JJ., concur.

Dickson, J., dissents without opinion.