FILED

Aug 29 2019, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

Dorie Maryan
Maryan Law, LLC
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathaniel Walmsley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 29, 2019

Court of Appeals Case No.
18A-CR-2506

Appeal from the
Ripley Circuit Court

The Honorable
Ryan King, Judge

Trial Court Cause No.
69C01-1711-MR-1

**Vaidik, Chief Judge.**

# Case Summary

[1] A person who kills another human being while committing one of several enumerated felonies, including delivery of a narcotic drug, is guilty of felony

murder. In this case, the State charged Nathaniel Walmsley with felony murder after he injected his wife Rachel with a drug and she died of an overdose, claiming that the injection constituted "delivery" of the drug. Nathaniel filed a motion to dismiss, which the trial court denied. Because the evidence shows that Nathaniel and Rachel jointly acquired possession of the drug for their own use, Nathaniel did not "deliver" the drug to Rachel when he injected her. We therefore reverse the trial court's denial of Nathaniel's motion to dismiss the felony-murder charge.

## Facts and Procedural History

On July 30, 2017, Nathaniel texted James Alvin Trimnell asking for a "G" for "100." Appellant's App. Vol. II p. 18. Later that day, Trimnell delivered either fentanyl or a combination of heroin and fentanyl to Nathaniel and Rachel's Batesville home.[1] After Trimnell left the Walmsley home, Nathaniel and Rachel went into the bathroom, where Nathaniel cooked the drug. Nathaniel injected Rachel with her consent and then injected himself. Shortly thereafter, Rachel passed out on the bathroom floor. Hours later, Nathaniel took Rachel to the hospital, where she was pronounced dead.

---

[1] Rachel's cause of death was acute fentanyl and ethanol intoxication. It's unclear whether the substance was heroin and fentanyl or just fentanyl.

[3]     Following a three-month investigation, on November 9, 2017, the State charged Trimnell and Nathaniel with felony murder. Nathaniel's charging information provides as follows:

> On or about July 30, 2017, Nathaniel Walmsley, while committing the crime of Dealing a Narcotic Drug, which is to knowingly or intentionally deliver a narcotic drug, that is: heroin (pure or adulterated), did kill another human being, that is: Rachel Walmsley[.]

*Id.* at 21 (formatting altered). The charges against Trimnell and Nathaniel were newsworthy, as it was believed to be the first time in Indiana that someone had been charged with felony murder for the overdose death of a consenting adult. *See, e.g.*, *2 Charged with Felony Murder in Batesville OD Death*, The Indiana Lawyer (Nov. 9, 2017), https://www.theindianalawyer.com/articles/45338-charged-with-felony-murder-in-batesville-od-death; Diana Raver, *Batesville Men Accused of Murder*, The Herald-Tribune (Nov. 8, 2017), https://www.batesvilleheraldtribune.com/news/local_news/batesville-men-accused-of-murder/article_6e5f6a73-bddd-5b67-ba73-ff6dbedb61d6.html (Ripley County Prosecutor: "This is the first felony murder charge based on an overdose case in Ripley County and possibly the first in Indiana. . . . A lot of people will be watching to see how this case unfolds.").

[4]     Thereafter, Trimnell and Nathaniel filed motions to dismiss pursuant to Indiana Code section 35-34-1-4(a)(5), alleging that the facts recited in their charging informations did not constitute felony murder. Pursuant to Indiana Code section 35-34-1-8(a)—which allows a defendant to submit affidavits and

documentary evidence with a motion to dismiss—Nathaniel designated Trimnell's police interview (Exhibit A) as well as his police interview (Exhibit B) and affidavit (Exhibit C). Tr. pp. 8-10. Nathaniel's affidavit alleges as follows: (1) on the day of Rachel's death, Nathaniel and Rachel agreed to purchase heroin from Trimnell; (2) Nathaniel and Rachel "used Rachel's tip money that she retrieved from her purse to buy what [they] believed to be heroin from Trimnell"; and (3) Trimnell handed Nathaniel the drugs "in Rachel's presence [and] with her knowledge." Ex. C. Although Section 35-34-1-8(b) allows the State to submit documentary evidence to refute the allegations in a motion to dismiss, the State did not do so here. Following a hearing, the trial court denied Trimnell's and Nathaniel's motions to dismiss and certified the orders for interlocutory appeal. We accepted jurisdiction in each case.

[5]    On December 31, 2018, this Court reversed the trial court's denial of Trimnell's motion to dismiss. The majority held that Trimnell could not be tried for felony murder for the overdose death of Rachel based on the facts and circumstances of the case. *Trimnell v. State*, 119 N.E.3d 92 (Ind. Ct. App. 2018), *trans. not sought*. This author concurred in the result, reasoning that the felony-murder statute, as a matter of law, cannot apply when the death "occurs after—not during—the delivery of drugs." *Id.* at 98 (Vaidik, C.J., concurring in result and

"express[ing] no opinion as to whether Nathaniel's act of administering the drugs to Rachel constitutes dealing or felony murder.").[2]

[6] Nathaniel's appeal is now before us. We held oral argument in this case on August 6, 2019.

# Discussion and Decision

[7] Nathaniel contends that the trial court erred in denying his motion to dismiss the felony-murder charge. We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion, which occurs only if a trial court's decision is clearly against the logic and effect of the facts and circumstances. *Gutenstein v. State*, 59 N.E.3d 984, 994 (Ind. Ct. App. 2016), *trans. denied*.

---

[2] After Rachel's death, the legislature created a new offense—dealing in a controlled substance resulting in death—effective July 1, 2018. Ind. Code § 35-42-1-1.5; P.L. 198-2018. This statute provides, in part:

> (a) A person who knowingly or intentionally manufactures or delivers a controlled substance or controlled substance analog, in violation of:
>
>   (1) IC 35-48-4-1 (dealing in cocaine or a narcotic drug);
>
>   (2) IC 35-48-4-1.1 (dealing in methamphetamine);
>
>   (3) IC 35-48-4-1.2 (manufacturing methamphetamine); or
>
>   (4) IC 35-48-4-2 (dealing in a schedule I, II, or III controlled substance);
>
> that, when the controlled substance is used, injected, inhaled, absorbed, or ingested, results in the death of a human being who used the controlled substance, commits dealing in a controlled substance resulting in death, a Level 1 felony.

I.C. § 35-42-1-1.5. Although this statute cannot be applied to Trimnell (since it was passed after the events in this case), it does apply to people who, like Trimnell, deliver a drug that results in the user's death.

[8] A person who "kills another human being while committing or attempting to commit" dealing in a narcotic drug commits murder. Ind. Code § 35-42-1-1(3)(A). As relevant here, "dealing" is committed when a person knowingly or intentionally "delivers" a Schedule I or II narcotic drug. Ind. Code § 35-48-4-1(a)(1)(C). Nathaniel doesn't dispute that the drug is a Schedule I or II narcotic drug. Rather, Nathaniel argues that he didn't "deliver" the drug to Rachel when he injected her. "Delivery" is defined as:

> (1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or
>
> (2) the organizing or supervising of an activity described in subdivision (1).

Ind. Code § 35-48-1-11.

[9] The State argues that the Indiana Supreme Court's decision in *Duncan v. State*, 857 N.E.2d 955 (Ind. 2006), controls this case. In *Duncan*, the defendant had a prescription for methadone. She gave 1/4 of a tablet to Noah, a two-year-old in her care, and Noah died the next day from methadone poisoning. The State charged the defendant with felony murder for killing Noah while committing or attempting to commit dealing in a Schedule II controlled substance, and the jury found her guilty. On appeal, our Supreme Court recognized that applying the felony-murder statute to the facts presented was "unusual." *Id.* at 958. It stated that although the defendant's conduct in administering the methadone to Noah satisfied "the technical requirements of a dealing conviction," it

"seem[ed] at the margins of the conduct targeted by the statute."[3]  *Id.* at 960; *see also id.* at 958 ("The jury found that [the defendant] administered the drug and therefore committed the felony of 'dealing.'").

[10]  Nathaniel argues that *Duncan* is distinguishable because it involved a "two-year-old who did not voluntarily choose to ingest methadone," while this case involves "an adult who dies after choosing to use drugs."  Appellant's Br. p. 23. We agree with Nathaniel: an adult choosing to do drugs is much different than a two-year-old being given drugs.  Because the State concedes that Rachel consented to the injection, *Duncan* does not control this case.

[11]  Nathaniel then argues that the felony-murder statute does not apply to him because "[a] husband who jointly purchase[s] and possess[es] drugs with his wife cannot thereafter deliver the drugs to her."  Appellant's Br. p. 11. Nathaniel cites cases from other jurisdictions to support this proposition.

[12]  In *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), an engaged couple purchased cocaine from an informant, and each of them was charged in federal court with possession of cocaine with intent to distribute, as opposed to simple possession, for sharing the cocaine with each other.  The Second Circuit held:

> [W]here two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it

---

[3] The issue on appeal was whether Noah was killed during the commission of the dealing, since he died the next day.  Our Supreme Court held, "Although Noah died the next day, the dealing was the first step in a chain of events that led to his death.  This rendered the act 'killing' that occurred 'during' the felony even though the victim survived for some period of time."  *Duncan*, 857 N.E.2d at 958.

together, their only crime is personal drug abuse—simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution. [T]hey must therefore be treated as possessors for personal use rather than for further distribution.

*Id.* at 450. Accordingly, the Second Circuit vacated the couple's convictions and ordered that convictions be entered on the lesser-included offense of simple possession.

[13] The Seventh Circuit cited *Swiderski* with approval in *Weldon v. United States*, 840 F.3d 865 (7th Cir. 2016), a case similar to this one. There, the defendant, his girlfriend Andrea, and their friend David pooled their money to buy heroin from the defendant's dealer. David drove the trio to meet up with the dealer, and the defendant got out of David's car and into the dealer's car, where he exchanged money for heroin. The defendant got back into David's car, and David drove them to his house, where Andrea injected all three of them with the heroin. David died. The defendant was charged with distributing an illegal drug resulting in death. (Andrea was also charged for her role in David's death but argued to the jury that what she did in injecting David was not distribution, and the jury acquitted her). The Seventh Circuit noted the Second Circuit's holding in *Swiderski*:

> *United States v. Swiderski*, 548 F.2d 445, 450 (2d Cir. 1977), holds that individuals who "simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together," are not distributors, "since both acquire possession

from the outset and neither intends to distribute the drug to a third person," and so "neither serves as a link in the chain of distribution." This reasoning has been approved in several cases, see *United States v. Layne*, 192 F.3d 556, 569 (6th Cir. 1999); *United States v. Hardy*, 895 F.2d 1331, 1334-35 (11th Cir. 1990); *United States v. Rush*, 738 F.2d 497, 514 (1st Cir. 1984); *cf. United States v. Mancuso*, 718 F.3d 780, 798 and n.10 (9th Cir. 2013), though our court has had no occasion to opine on it.

*Weldon*, 840 F.3d at 866-67. Judge Posner described the situation in common-sense fashion:

> Suppose you have lunch with a friend, order two hamburgers, and when your hamburgers are ready you pick them up at the food counter and bring them back to the table and he eats one and you eat the other. It would be very odd to describe what you had done as "distributing" the food to him. **It is similarly odd to describe what either [the defendant] or [Andrea] did as distribution.** They had agreed to get high together, they shared the expense, they all went together to the drug dealer, and they shared the drug that they bought from him. It's true that only [the defendant] transferred the money for the drug to the dealer, but it was the pooled money that he was handing over, although his contribution to the pool had been slight. It's true that having paid he carried the drug back to [David's] car. But it would have been absurd for all three to have gone up to the dealer and each pay him separately, and even more absurd for them to have carried the minute package, containing less than half a gram of powder, together to the car and from the car to [David's] residence.

*Id.* at 866 (emphasis added). Other courts have reached similar conclusions.

*See, e.g., People v. Coots*, 968 N.E.2d 1151 (Ill. App. Ct. 2012) (collecting cases);

*State v. Lopez*, 819 A.2d 486, 492-93 (N.J. Super. Ct. App. Div. 2003) ("[O]ne

cannot acquire something one already possesses. Having an object with the intent to distribute presumes that the intended recipient does not have possession of it. Therefore, as a matter of law, two or more defendants cannot intend to distribute to each other drugs they jointly possess."); *People v. Edwards*, 702 P.2d 555, 559 (Cal. 1985) ("The distinction . . . between one who sells or furnishes heroin and one who simply participates in a group purchase seems to be a valid one, at least where the individuals involved are truly 'equal partners' in the purchase and the purchase is made strictly for each individual's personal use. Under such circumstances, it cannot reasonably be said that each individual has 'supplied' heroin to the others.").

[14] We agree with the rationale of these courts and likewise hold that, as a matter of law, two or more people cannot deliver to each other drugs that they jointly possess. In other words, when two or more people jointly acquire possession of a drug for their own use, intending only to share it together, they do not "deliver" the drug when they inject or hand the drug to the other person, since they acquired possession from the outset and did not intend to distribute the drug to a third person. Here, the basis of the State's felony-murder charge against Nathaniel is that he delivered the drug to Rachel by injecting her. Nathaniel's affidavit, however, provides that Nathaniel and Rachel agreed to purchase heroin from Trimnell, they used Rachel's tip money to purchase it, and Trimnell handed the drug to Nathaniel "in Rachel's presence [and] with her knowledge." Ex. C. The State did not submit any evidence to dispute these allegations and at oral argument maintained that Rachel's involvement in the

purchase of the drug was not "relevant." Oral Arg. Video at 27:20. Because the evidence shows that Nathaniel and Rachel jointly acquired possession of the drug for their own use the moment Trimnell dropped it off at their house, Nathaniel did not "deliver" the drug to Rachael when he injected her.[4] Therefore, he can't be charged with felony murder for injecting her.[5] We therefore reverse the trial court's denial of Nathaniel's motion to dismiss the felony-murder charge.

Reversed.

Kirsch, J, and Altice, J. concur.

---

[4] As noted above, delivery is defined as "an actual or constructive transfer from one (1) person to another of a controlled substance, **whether or not there is an agency relationship**." I.C. § 35-48-1-11 (emphasis added). In its brief, the State didn't make any argument based on the emphasized language. After oral argument, the State filed a notice of additional authority citing two cases in which the courts discussed this language in upholding convictions for "delivery" of drugs to co-users. *See Graham v. State*, 971 N.E.2d 713 (Ind. Ct. App. 2012), *trans. denied*; *State v. Moore*, 529 N.W.2d 264 (Iowa 1995). *Swiderski* considered this same issue, holding that the language "whether or not there exists an agency relationship" did not mean that joint possessors who share drugs are guilty of distributing the drugs: "Purchasers who simultaneously acquire a drug jointly for their own purpose, however, do not perform any service as links in the chain; they are the ultimate users." 548 F.2d at 451. To the extent that *Graham* and *Moore* conflict with the *Swiderski* line of cases, we think that *Swiderski* got it right.

[5] This doesn't mean that Nathaniel didn't commit a crime. As defense counsel conceded at oral argument, Nathaniel could be convicted of drug possession or even reckless homicide (depending on what the developed facts showed). Oral Arg. Video at 40:22-41:20.